UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT D. SANGO #252200,

        Plaintiff,

v.

UNKNOWN FLEURY, et al.,

        Defendants.
_____/

Case No. 2:20-cv-00187

Hon. Robert J. Jonker
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Robert D. Sango pursuant to 42 U.S.C. § 1983. Sango alleges in his verified complaint that Corrections Officers Fleury and Eubanks, employees at Alger Correctional Facility (LMF), attempted to incite other prisoners to harm him. (ECF No. 1.) Sango says that after he received his case number in *Sango v. Eubanks*, W.D. Mich. Case No. 2:20-cv-160, Corrections Officer Fleury (CO) fired several kitchen workers for having extra food. (*Id.*, PageID.2.) Sango claims that Fleury told kitchen workers that because Sango filed a lawsuit against CO Eubanks, Fleury "wasn't going to allow anyone to slide (i.e. get away with anything) that they should get me off the yard (i.e., prison speak, for 'hurt or kill' me, i.e. so I'm no longer a factor)." (*Id.*)

Sango says that COs Eubanks and Fleury had allowed prisoners to gamble, and make, sell and drink alcohol. (*Id.*) After Sango received his notice of the initial

filing fee from this Court, Defendants no longer allowed prisoners to drink or gamble. (*Id.*)  Sango says that Fleury and Eubanks told the prisoners that if they wanted things to go back to the way they were, they needed to get Sango "off the yard." (*Id.*)

On February 5, 2021, COs Fleury and Eubanks filed a motion for summary judgment asserting that Sango failed to exhaust his administrative remedies. (ECF No. 12.)  Defendants included a Michigan Department of Corrections (MDOC) Prisoner Step III Grievance Report that indicates that Sango did not pursue any grievances through Step III of the grievance process during the relevant time period. (ECF No. 13-3.)  Sango has not responded.

The undersigned concludes that Defendants have shown that Sango did not exhaust his administrative remedies with respect to the claims he makes in this case. In addition, Sango has not responded.  Thus, he has not provided the Court with any reason to consider excusing the exhaustion requirement in this case.  Accordingly, the undersigned respectfully recommends dismissal of this case without prejudice.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The

issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

**IV. Analysis**

Defendants have provided the Court with a copy of the MDOC Prisoner Step III Grievance Report for Robert Sango, prisoner number 252200. (ECF No. 13-3, PageID.58-66.) According to an affidavit by Carolyn Nelson, this report is based on information in the MDOC's database and lists all grievances that Sango filed at Step III. (*Id.*, PageID.57.) Nelson's affidavit is dated February 2, 2021, and the report was filed on February 5, 2021. The report indicates that Sango last filed a Step III appeal

on November 3, 2015. (*Id*. PageID.58.) The report also indicates that Sango did not file a Step III grievance appeal at LMF.

Defendants submitted the affidavit of MDOC Litigation Specialist Jaquine Castillo. (ECF No. 13-4, PageID.68.) Castillo attests that Sango transferred to the LMF on March 2, 2020. (*Id*.) The events at issue in this case took place at LMF in 2020. (ECF No. 1, PageID.2.)

Based on the records provided by Defendants, the undersigned concludes that Sango did not exhaust the claims he raises in this case. In addition, the Court notes that Sango did not respond to Defendants' motion for summary judgment and has failed to provide a reason for the Court to conclude that his failure to exhaust his administrative remedies should be excused.

## V. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF No. 12) and dismiss Sango's complaint without prejudice due to Sango's failure to exhaust his administrative remedies.

Dated:  May 7, 2021                         /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.

72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).